UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

CYRIL HORSHAM,

                            Plaintiff,

        v.

FRESH DIRECT,

                           Defendant.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
14-CV-651 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Cyril Horsham, proceeding *pro se*, commenced the above captioned action on January 28, 2014, against Defendant Fresh Direct, alleging age and disability discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the New York State Human Rights Law ("NYSHRL"). On February 6, 2014, Magistrate Judge Lois Bloom granted Plaintiff's application to proceed *in forma pauperis* under 28 U.S.C. § 1915. (Docket Entry No. 4.) On June 19, 2014, the Court held a pre-motion conference to discuss Defendant's anticipated motion to dismiss and granted Plaintiff thirty days to amend the Complaint to add facts supporting his claims. (June 19, 2014 Minute Entry.) On September 22, 2014, Plaintiff filed an Amended Complaint.[1] (Am. Compl., Docket Entry No. 15.) Defendant now moves to dismiss the Amended Complaint. (Def. Mot. to Dismiss, Docket Entry No. 18; Def. Mem. in Support of Mot. to Dismiss ("Def. Mem."), Docket Entry No. 18-1.) For the reasons discussed below, the Court grants Defendant's motion to

---

[1] Although the Amended Complaint contains no citations to statutes, Plaintiff removed all allegations of age discrimination. Therefore, the Court only addresses Plaintiff's disability claims arising under the ADA and NYSHRL.

dismiss the Amended Complaint, but gives Plaintiff thirty (30) days to file a seconded amended complaint.

## I. Background

The allegations in the Amended Complaint are assumed to be true for the purposes of deciding this motion.[2]  For six years, Plaintiff worked for Defendant in an unknown position.[3] (Am. Compl. 2.)  After developing a work-related hernia, Plaintiff underwent surgery to correct the problem.  (*Id.* at 2–3.)  According to Plaintiff, prior to his hernia operation, he was regarded as a successful employee and received awards, but after his hernia operation, Defendant began discriminating against him.  (*Id.* at 3.)  In particular, without notifying Plaintiff, Defendant placed him on an unpaid "[d]isciplinary [l]eave of [a]bsence."  (*Id.* at 2–3.)  Plaintiff believes this was improper because his hernia was a work-related injury that entitled him to workers' compensation payments or disability benefits, and did not warrant disciplinary leave.  (*Id.* at 3, 7–9.)  Plaintiff also claims that, unlike other injured workers, Defendant placed him on unpaid disciplinary leave.  (*Id.* at 3.)  Plaintiff contends that Defendant normally requires employees to formally request a leave of absence, and Plaintiff knows of no other employees who were treated like he was.  (*Id.*)  Plaintiff alleges this was discrimination.

---

[2]  The Amended Complaint totals ten pages, but has no pagination.  It also includes a cover letter to the Court regarding Plaintiff's prior attempt to submit the Amended Complaint. (Am. Compl. 1.)  The Court refers to the specific page of the ten-page Amended Complaint as if the pages were consecutively paginated, beginning with the cover letter as page 1.

[3]  Defendant claims that Plaintiff was not employed by Fresh Direct, but rather UTF Trucking, and asserts that Plaintiff misidentifies Fresh Direct as the Defendant-employer.  (Def. Mem. 1.)  However, Defendant does not argue that this alleged error forecloses Plaintiff's claims against Fresh Direct.

### a. Plaintiff's recovery from hernia surgery

After undergoing hernia surgery,[4] Plaintiff's doctor told him not to work for fourteen days and thereafter to perform only "[l]ight [d]uty" for his first six weeks back at work. (*Id.*) During his fourteen-day recovery period, Plaintiff routinely spoke with one of Defendant's dispatchers named "Al." (*Id.*) Near the end of his fourteen-day home recovery, Plaintiff went to work and informed Defendant about the doctor's recommendation. (*Id.*) While there, Plaintiff provided information about his injury, surgery and recovery to "Zoila" in Defendant's human resources department ("HR") and to an employee who dealt with safety issues. (*Id.* at 3–4.) Zoila told Plaintiff that HR would contact him about light duty work he could perform. (*Id.* at 4.) Although Plaintiff offered to come in two days later, Al, the company dispatcher, told him to stay at home until HR called him. (*Id.*)

Plaintiff stayed home as Al directed, but no one contacted him. (*Id.*) At the time, Plaintiff believed Defendant was allowing him time to heal, but he also noticed that he stopped receiving paychecks. (*Id.*) Toward the end of his six-week light duty time, Plaintiff visited his doctor to confirm he could resume working. (*Id.* at 4–5.) Plaintiff's doctor informed him that his recovery was behind schedule, but the doctor did not extend his light duty time, instead he directed Plaintiff to "wear a [b]elt and secure [him]self when [he] returned to the job." (*Id.*)

### b. Plaintiff follows up with Defendant

Plaintiff went to work at the end of the six-week light duty time. (*Id.* at 5.) When Plaintiff arrived, Al informed Plaintiff that he was permitted to miss three months of work and retain his job. (*Id.*) Because Plaintiff had not previously filed an injury report, Plaintiff spoke

---

[4] The Amended Complaint does not specify when Plaintiff underwent surgery; however his initial *pro se* Complaint stated that it was in October of 2012. (Compl. 6, Docket Entry No. 1.)

with his Manager, "Madjie," to create one.  (*Id.*)  Madjie asked that Plaintiff's doctor prepare a

letter stating he was fit to return to work.  (*Id.*)

Thereafter, based on concerns about Plaintiff's recovery, Plaintiff's doctor scheduled a

"CAT scan" for December 6, 2012.  (*Id.* at 5–6.)  Plaintiff also had additional follow-up

appointments with his doctor.  (*Id.* at 6.)  Throughout this time period, Plaintiff informed the

dispatcher, Al, about his status, and Al told Plaintiff he would relay the information to someone

named "Michael."  (*Id.* at 5–6.)  At some point, Plaintiff visited his doctor to get the letter he

needed before returning to work, and he told his doctor that he was hesitant to begin working

because working with Defendant's truck contributed to his hernia.  (*Id.* at 6.)  The doctor

suggested Plaintiff start with less physically demanding work, and then gradually resume his

prior work.  (*Id.*)

### c.  **Plaintiff attempts to return to work**

On April 26, 2013, Plaintiff delivered the doctor's letter to Defendant.  (*Id.*)  That day,

Plaintiff told his union that he had not been paid since the surgery.  (*Id.*)  In response, a union

member gave Plaintiff a telephone number to call and "straighten" out his "entitlements."  (*Id.*)

Plaintiff did not reach anyone at that number, but a union member called him back and informed

Plaintiff that Defendant believed he walked away from his job.  (*Id.* at 7.)  The union member

told Plaintiff to speak with HR.  (*Id.*)

After failing to reach HR, Plaintiff complained to the "Labor Board."[5]  (*Id.*)  Plaintiff

alleged that after his surgery, Defendant placed him on unpaid disciplinary leave instead of

---

[5]  Plaintiff's reference to the "Labor Board" appears to be a reference to the New York
State Division of Human Rights.  Throughout the Amended Complaint, Plaintiff refers to his
interaction with the "Human Rights Dep[artment] of the Labor Board."  (Am. Compl. 7–8.)

"[l]imited [d]isability," to avoid paying him workers' compensation and disability benefits.[6]

(*Id.*)  This deprived Plaintiff of the "emergency services" he was entitled to after having paid for

them through six years of work and paycheck deductions.  (*Id.* at 7–8.)

On May 14, 2013, Plaintiff filed a complaint with the New York State Division of

Human Rights ("NYSDHR"), alleging age and disability discrimination.  (NYSDHR Compl.,

annexed to Decl. of Jeannine Idrissa ("Idrissa Decl.") as Ex. 1, Docket Entry No. 18-2.)  During

the ensuing investigation, Plaintiff learned that Defendant had terminated him sometime in June

of 2013, but he had never received notice of, or any correspondence regarding, his termination.

(Am. Compl. 8.)  Plaintiff then applied for unemployment benefits, but Defendant opposed his

application, stating that it had "lots of work [he] could do."  (*Id.* at 8–9.)  On November 13,

2013, the NYSDHR issued the results of its investigation, finding no probable cause to believe

Defendant had committed the discrimination Plaintiff alleged.[7]  (NYSDHR Determination and

Order after Investigation ("NYSDHR Order"), annexed to Idrissa Decl. as Ex. 2.)

On June 26, 2013, Plaintiff received a letter from Defendant dated May 10, 2013 (the

"May 10, 2013 Letter"), which he alleges was fraudulently dated and contained false

---

[6]  According to Plaintiff, injured workers are normally placed on limited disability and receive benefits.  (Am. Compl. 6.)

[7]  Plaintiff attached an EEOC right to sue letter, issued on January 14, 2012, to his first Complaint.  (Compl. 17.)  However, the Amended Complaint does not reference or attach the EEOC letter or any determination by NYSDHR.  The Court considers the NYSDHR letter as a document integral to the Complaint.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991))).

statements.[8]  (Am. Compl. 9–10; May 10, 2013 Letter, annexed to Decl. of Michelle Flete as Ex.

1, Docket Entry No. 18-3.)  The May 10, 2013 Letter stated that Plaintiff's leave time had

expired, and that Plaintiff had not contacted Defendant from October 24, 2012 until April 24,

2013.  (Am. Compl. 10; May 10, 2013 Letter 1.)  Plaintiff alleges that the May 10, 2013 Letter is

false, because he visited Defendant in November of 2012, when his recommended six-week light

duty time was complete.  (Am. Compl. 10.)

Plaintiff contends that, given his prior performance with Defendant, he did not deserve to

be placed on an unpaid disciplinary leave of absence after his surgery.  (*Id.* at 1, 9.)  Plaintiff

further contends that by placing him on unpaid disciplinary leave, Defendant "eliminated [his]

right to seek unemployment . . . compensation because [he] was not officially fired from [his]

job."  (*Id.* at 8.)  Plaintiff asserts that Defendant's "calculated efforts" to deny him the limited

disability or workers' compensation benefits he was entitled to "should be considered . . .

discrimi[na]tory."  (*Id.*)  Plaintiff also asserts that Defendant's conduct was discriminatory

because it caused people to "harbor negative thoughts towards [Plaintiff]."  (*Id.* at 10.)

## II.  Discussion

### a.  Standards of review

#### i.  Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to

Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it . . . .'"

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir.

2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*,

---

[8]  Although unclear, it appears this letter was in response to Plaintiff's "Labor Board"
complaint.

718 F.3d 48, 50 (2d Cir. 2013) (same). A plaintiff asserting subject matter jurisdiction has the burden to prove that it exists, and in evaluating whether the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citations omitted), *aff'd*, 561 U.S. 247 (2010). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010); *Morrison*, 547 F.3d at 170.

### ii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions"

or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Analyzing a motion to dismiss an employment discrimination claim requires reference not only to the pleading standards discussed above, but also to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which governs a plaintiff's ultimate burden of proof at trial. *Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015) (discussing burden-shifting, citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–55 (1981)). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination. *Hicks*, 509 U.S. at 506; *see also Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11 (2d Cir. 2013); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). The plaintiff's burden at this stage is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *Hicks*, 509 U.S. at 506). If plaintiff meets her burden at this stage, a "temporary presumption" of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the treatment. *Vega v. Hempstead Union Free Sch. Dist.*, --- F.3d ---, ---, 2015 WL 5127519, at *9 (2d Cir. Sept. 2, 2015) (quoting *Littlejohn*, 795 F.3d at 307, 311). If the employer articulates a reason, the burden ultimately shifts back to the employee to show that the employer's reason was pretext. *Id.*

To survive a motion to dismiss, the plaintiff does not need to prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas prima facie* case, but the facts alleged must give "plausible support to the reduced requirements" of the *prima facie* case. *Littlejohn*, 795 F.3d at 311; *see Dawson v. N.Y.C. Transit Auth.*, --- F. App'x ---, ---, 2015 WL

5438790, at *1–2 (2d Cir. Sept. 16, 2015); *Vega*, --- F.3d at ---, 2015 WL 5127519, at *9–10;

*Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for

establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard

that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original)

(quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))); *see also Awad v. City of New

York*, No. 13-CV-5753, 2014 WL 1814114, at *2 (E.D.N.Y. May 7, 2014) (noting that the

elements of a *prima facie* case provide an outline of what would make a plaintiff's employment

discrimination claim plausible). Thus, a plaintiff need only plead facts to give "plausible

support" to plaintiff's "minimal" initial burden, which is governed by the statute under which she

brings her claims. *Vega*, --- F.3d at ---, 2015 WL 5127519, at *9–10 (quoting *Littlejohn*, 795

F.3d at 307, 312); *see Dawson*, --- F. App'x at ---, 2015 WL 5438790, at *2 ("We apply [the

*Littlejohn*] standard in reviewing the district court's dismissal of Plaintiff's ADA complaint.").

### b. Plaintiff's ADA discrimination claims

Construed liberally, the Amended Complaint alleges that Defendant discriminated against

Plaintiff based on his disability when it improperly placed him on unpaid disciplinary leave,

denied him workers' compensation and disability benefits, and failed to accommodate his

disability. Defendant contends that Plaintiff has not pleaded sufficient facts to support any ADA

discrimination claim and that any claims for workers' compensation benefits must be field with

the New York State Workers' Compensation Board. (Def. Mem. 8–10.)

To establish a *prima facie* case of discrimination under the ADA,[9] a plaintiff must show

---

[9] In 2008, Congress enacted the ADA Amendments Act (the "ADAAA"), which took effect on January 1, 2009. *See* ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553 (codified at 42 U.S.C. § 12101 *et seq.*). The ADAAA broadened aspects of the ADA and found that the Supreme Court's interpretation of when an impairment "substantially limits" a

that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010) (citation and internal quotation marks omitted); *see also Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 48–49 (2d Cir. 2014) (quoting *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013)) (outlining requirements for prima facie case under the ADA).  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Major life activities include standing, lifting, bending, speaking, and working.  *Id.* § 12102(2)(A).  Under the EEOC's regulations, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA' and 'is not meant to be a demanding standard.'" *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(i)).  As a result, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

---

major life activity created "an inappropriately high level of limitation than was intended by Congress."  *Price v. City of New York*, 558 F. App'x 119, 120–21 (2d Cir. 2014) (quoting Pub. L. No. 110–325 § 2(a)(7) & (b)(5)).  Although the ADAAA is not retroactive to conduct occurring prior to the Act's effective date, January 1, 2009, *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.2 (2d Cir. 2014), here, because Plaintiff challenges an alleged adverse action that occurred after January 1, 2009, the Court evaluates Plaintiff's claim under the ADA framework as modified by the ADAAA and its accompanying regulations, *see Price*, 558 F. App'x at 120–21 (2d Cir. 2014) ("[T]he ADAAA's definition of 'substantially limits' applies only to claims accruing after January 1, 2009.").

Even absent an actual or recorded disability, an employee is still disabled if the employee

is "regarded as having such an impairment." 42 U.S.C. § 12102. Prior to the ADA's 2008

amendment, a plaintiff who was "regarded as" disabled had to show that the employer regarded

the plaintiff as having an impairment that substantially limited a major life activity. *See Hilton v.

Wright*, 673 F.3d 120, 128–29 (2d Cir. 2012) (discussing pre-amendment standard for assessing

"regarded as" claims). However, as amended, an employee need not show that the employer

perceived both the impairment and that it substantially limited a major life activity; instead:

> An individual meets the requirement of "being regarded as having
> such an impairment" if the individual establishes that he or she has
> been subjected to an action prohibited under this chapter because
> of an actual or perceived physical or mental impairment whether or
> not the impairment limits or is perceived to limit a major life
> activity.

42 U.S.C. § 12102; *Hilton*, 673 F.3d at 129 (finding that under the amended ADA, the employee

only had to show that the employer "regarded him as having a mental or physical impairment . . .

[and] was not required to present evidence of how or to what degree [the employer] believed the

impairment affected him"); *Rodriguez v. Verizon Telecom*, No. 13-CV-6969, 2014 WL 6807834,

at *5 (S.D.N.Y. Dec. 3, 2014) ("The ADAAA added a paragraph that exempts 'regarded as'

claimants from being compelled to demonstrate that the disability they are perceived as having

substantially limits a major life activity.") "Whether an individual is 'regarded as' having a

disability 'turns on the employer's perception of the employee' and is therefore 'a question of

intent, not whether the employee has a disability.'" *Simmons v. N.Y.C. Transit Auth.*, 340 F.

App'x 24, 27 (2d Cir. 2009) (quoting *Francis v. City of Meriden*, 129 F.3d 281, 284 (2d Cir.

1997)). However, "the 'regarded as' definition of disability does not apply to impairments that

are both 'transitory and minor,'" *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 606

(E.D.N.Y. 2013) (quoting 42 U.S.C. § 12102(3)(B)), which the statute defines as impairments

with "an actual or expected duration of 6 months or less," 42 U.S.C. § 12102(3)(B).

Construed liberally, the Amended Complaint comes close, but fails to plead sufficient facts to support a claim for discrimination or failure to accommodate under the ADA. Although Plaintiff makes no allegations that Defendant is covered by the ADA, Defendant does not appear to contest that it is subject to the ADA. Nor does Defendant contest that Plaintiff was qualified to perform the essential functions of the job. However, as discussed below, Defendant argues that Plaintiff has failed to plead facts that he was disabled, that he was terminated because of the alleged disability, and that Defendant failed to accommodate his alleged disability.

### i. Plaintiff's disability

The Amended Complaint does not allege that Plaintiff was actually disabled or that he had a record of disability. Plaintiff makes vague references to his hernia and his treatment plan, stating that he was hesitant to resume the same work that had contributed to the hernia, and that his doctor limited him to light duty and suggested he "wear a belt to secure [him]self." (Am. Compl. 7–8.) However, the Amended Complaint does not allege how any of this substantially limited a major life activity such as his ability to lift objects, stand, or work. *See Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) ("[A]lthough lifting light objects may be a major life activity, an individual is not 'disabled' merely because he cannot lift heavier objects weighing, for instance, around twenty pounds." (internal citations omitted)); *Dechberry v. N.Y.C. Fire Dep't*, --- F. Supp. 3d ---, ---, 2015 WL 4878460, at *16 (E.D.N.Y. Aug. 14, 2015) ("[P]laintiff does not allege any facts for the court to determine whether she is disabled within the meaning of the ADA. Although plaintiff arguably identifies her alleged disability as 'severe tendonitis' and other unspecified injuries to her upper extremities, she does not explain what 'major life activity' is 'substantially limited.'"). Further, even if Plaintiff was

afraid of resuming work while he was still recovering, this fails to establish any physical limitations.

Liberally construing Plaintiff's allegations, as the Court must, Plaintiff seems to also allege that he was "regarded as" disabled by Defendant. Plaintiff alleges that when he returned to work thirteen days after his surgery, he informed Defendant about all the details of his hernia surgery and his light duty limitation. (Am. Compl. 4.) Two weeks after his surgery, Plaintiff informed Defendant that he could return to light duty, but the dispatcher told Plaintiff not to return because he was "injured" and the dispatcher "could not use [him]." (*Id.*) Plaintiff followed those instructions and waited the entire six weeks that he was limited to light duty time, but never heard from Defendant. (*Id.* at 5.) Then, when Plaintiff tried to return to work — approximately two months after his surgery — his dispatcher told him he could stay out of work for as long as three months, and Plaintiff's manager directed him to bring a doctor's report before returning to work. (*Id.*) These allegations plausibly suggest that Defendant perceived Plaintiff to have some kind of physical impairment that precluded him from returning to work.

Nevertheless, the face of the Amended Complaint suggests that Defendant believed that Plaintiff had only a transitory impairment. After learning of Plaintiff's hernia surgery and light duty limitation, Defendant first authorized Plaintiff to stay home for six weeks, and later allowed him to stay home for three months. Although this subsequent increase in the amount of time Plaintiff was permitted to be off of work suggests that Defendant may have determined that Plaintiff's impairment required more time off than Plaintiff initially requested, these facts do not support an inference that Defendant believed that Plaintiff's impairment would last longer than six months. Plaintiff was ultimately out of work for approximately six or seven months — from the time of his surgery sometime in October of 2012 until his termination in May of 2013.

However, there are no facts about the additional three to four months Plaintiff missed from work following the initial three months that the dispatcher told Plaintiff that he could miss immediately after his surgery. Plaintiff alleges that he kept Defendant informed of his medical status until his termination, (*id.* at 3, 5–6, 9), and to the extent that Defendant approved or kept Plaintiff out of work for the entire six or seven months, those facts could support an inference that Defendant perceived a non-transitory impairment, *see Davis v. Vt., Dep't of Corr.*, 868 F. Supp. 2d 313, 327 (D. Vt. 2012) ("[T]he allegations [surrounding the plaintiff's groin injury and hernia surgery] suggest that the perceived impairment, if not the actual impairment, lasted longer than six months."). However, the Amended Complaint does not allege such facts,[10] and as the facts are currently pleaded, Defendant appears to have perceived that Plaintiff had only a transitory impairment. As a result, Plaintiff has not sufficiently alleged that he was disabled under the ADA.

### ii. Alleged adverse actions

Liberally construed, the Amended Complaint alleges that Defendant discriminated against Plaintiff by improperly placing him on unpaid disciplinary leave, denying him workers' compensation and disability benefits, and ultimately terminating him. Defendant argues that this Court lacks jurisdiction as to Plaintiff's claims regarding workers' compensation benefits, because such claims must be brought in a New York State administrative proceeding. (Def. Mem. 8–9 & n.5.)

Placing an employee on unpaid leave can constitute an adverse employment action. *See St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 318 (E.D.N.Y. 2014) (noting that "courts

---

[10] Indeed, as Plaintiff alleged, and Defendant asserts on its motion to dismiss, Defendant believed he walked off the job. (Am. Compl. 7.)

find that being required to take unpaid leave can be an adverse employment action"); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 583 (S.D.N.Y. 2008) ("Being placed on unpaid leave and termination of employment constitute adverse employment actions." (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999))). Similarly, a material loss of benefits constitutes a materially adverse change in working conditions that is sufficient to establish the adverse action required to state an ADA claim. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) ("Examples of materially adverse changes include 'termination of employment . . . a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" (second alteration in original) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000))); *cf. Campbell v. N.Y.C. Transit Auth.*, --- F. Supp. 3d ---, ---, 2015 WL 1349820, at *13 (E.D.N.Y. Mar. 26, 2015) ("Plaintiff cannot show that the failure to investigate Davenport's claim against her affected any of her tangible job benefits, and thus cannot show that this was an adverse action.").

The New York State Workers' Compensation Law vests the New York State Workers' Compensation Board with jurisdiction over claims for benefits, *see* N.Y. Workers Comp. Law §§ 10–11, which can preclude certain claims for benefits in federal court, *see Hills v. Praxair, Inc.*, No. 11-CV-678, 2012 WL 1935207, at *9 (W.D.N.Y. May 29, 2012) ("Recovery of workers' compensation benefits is precluded by New York's Workers' Compensation Law."); *Sims v. N.Y.C. Dep't of Parks & Recreation*, No. 08-CV-5741, 2010 WL 46370, at *3 (S.D.N.Y. Jan. 6, 2010) ("[T]here is no subject matter jurisdiction for Plaintiff's remaining 'workers['] comp discrimination claims,' because such claims fall within the exclusive jurisdiction of the New York Workers' Compensation Law." (second alteration in original)); *O'Connor v. City of New York*, No. 2007-713RIC, 2007 WL 1004474, at *1 (N.Y. App. Term Apr. 2, 2007) ("The

Workers' Compensation Board has exclusive jurisdiction to hear and determine plaintiff's claim for workers' compensation benefits."). However, the Workers' Compensation Law cannot bar a federal civil rights lawsuit alleging discrimination by an employer in connection with such benefits. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1190 (2d Cir. 1987) (rejecting argument that Workers' Compensation Law precluded the plaintiff's claim for emotional distress under § 1981 and noting, "we do not read the workers' compensation law to deny relief under a federal statute. Were state law to erect such a bar, it would clearly run afoul of the Supremacy Clause of the U.S. Const. Art. VI, cl. 2." (internal citations omitted)); *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 375 (E.D.N.Y. 2012) ("'The New York State Worker[s'] Compensation [law] does not bar an employee from suing his employer under' the ADA." (quoting *Liss v. Nassau Cty.*, 425 F. Supp. 2d 335, 342 (E.D.N.Y. 2006))); *Fowler v. Kohl's Dep't Stores, Inc.*, No. 07-CV-1197, 2009 WL 2155481, at *3 (N.D.N.Y. July 16, 2009) ("[T]he court notes that § 11 of the Workers' Compensation Law is not an automatic bar on either ADA or NYHRL actions." (citing *Lopez*, 831 F.2d at 1190)).

Here, Plaintiff sufficiently alleges that Defendant subjected him to adverse actions. Plaintiff alleges that before Defendant terminated him, which was an adverse action, Defendant placed him on unpaid disciplinary leave and denied him disability benefits to which he was otherwise entitled. Although Defendant argues that Plaintiff's claim is barred by New York State's Workers' Compensation Law, liberally construing Plaintiff's *pro se* allegations, he asserts disability discrimination claims arising from Defendant (1) placing him on unpaid disciplinary leave (2) denying him workers' compensation benefits, and (3) terminating his employment. These claims are distinct from a claim for disability benefits. Plaintiff sufficiently alleges an adverse action.

### iii. Inference of discrimination

"At the initial stage of a litigation, the plaintiff' burden is 'minimal' — he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent,'" in taking the adverse employment action. *Vega*, --- F.3d at ---, 2015 WL 5127519, at *11 (quoting *Littlejohn*, 795 F.3d at 311). Therefore, "to defeat a motion to dismiss . . . a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his [membership in the protected group] was a motivating factor in the employment decision." *Id.* at *12.

### 1. Disciplinary leave and denial of benefits

Liberally construing the Amended Complaint, Plaintiff's allegations indicate that Defendant placed him on unpaid disciplinary leave and denied him benefits after he informed Defendant of his hernia and tried to return to work. Such temporal proximity could support an inference of discrimination. *See e.g.*, *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015) (finding allegations that the adverse actions occurred "just days after [the plaintiff] return[ed] to work following [an] injury" supported an inference of discrimination); *Baron v. Advanced Asset & Prop. Mgmt. Sol., LLC*, 15 F. Supp. 3d 274, 283 (E.D.N.Y. 2014) ("[C]ourts in this circuit have held that the temporal proximity of an employee's disclosure of a disability to his termination support an inference of discrimination." (citing cases)).

However, the allegations as to when Defendant stopped paying Plaintiff are unclear and, at times, contradictory. The Complaint first asserts that after he informed Defendant about his injury, and was told to stay home, Plaintiff realized he "was not receiving Payment Checks from [Defendant]." (Am. Compl. 4.) Plaintiff then alleges that he told his dispatcher that

"[Defendant] had stopped paying me when I came out of surgery." (*Id.* at 6.) Similarly, Plaintiff later alleges that it was after his complaint to the NYSDHR that he "realized" Defendant placed him on disciplinary leave "the very day [he] came out of surgery." (*Id.* at 8.) To the extent Plaintiff was not being paid even before he informed Defendant about his injury, those facts would not support an inference of discrimination. Given the inconsistencies in the allegations as to when Defendant stopped paying Plaintiff and placed him on leave, Plaintiff's allegations do not raise an inference of discrimination.

Plaintiff also attempts to raise an inference of discrimination by showing that Defendant treated him differently from other injured workers when it denied him benefits and placed him on disciplinary leave. Such disparate treatment in granting or denying benefits could support an inference of disability discrimination.[11] *See Ruiz*, 609 F.3d at 493 ("A showing of disparate treatment . . . is a recognized method of raising an inference of discrimination for the purposes of making out a *prima facie* case."); *cf. McDonnell v. Schindler Elevator Corp.*, --- F. App'x ---, ---, 2015 WL 4038567, at *3 (2d Cir. July 2, 2015) ("The two mechanics, other than McDonnell, laid off in 2011 from that district were *not* disabled, undermining any inference of discrimination from McDonnell's layoff."). Ultimately, to succeed on a disparate treatment claim, there must be facts suggesting that the plaintiff and the workers to whom he points were "'similarly situated" in "all material respects." *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). However, whether the

---

[11] Although Defendant argues that any Workers' Compensation-related claim fails because the Court lacks jurisdiction over such claims, this ignores the essence of Plaintiff's claim — that Defendant discriminated against him based on his disability when it denied him those benefits. In these circumstances, the Workers' Compensation Law is not a bar to Plaintiff's federal discrimination claim. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1190 (2d Cir. 1987).

plaintiff and other employees are similarly situated is ordinarily a jury question. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 54 (2d Cir. 2014) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury." (quoting *Graham*, 230 F.3d at 39)); *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (same). Because this is only the pleading stage, and Plaintiff is *pro se*, there need only be a minimal showing of comparability. *See Chepak v. Metro. Hosp.*, 555 F. App'x 74, 76 (2d Cir. 2014) ("Chepak's complaint alleged that she is a woman, that she sought promotion to a status and pay level held by similarly situated males, and was denied. Especially in light of her *pro se* status, those allegations were sufficient to state a claim."); *see also Dawson*, --- F. App'x at ---, 2015 WL 5438790, at *5 ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face even *after* they have survived a motion to dismiss.")

Here, assuming Plaintiff had pleaded a disability, his allegations about disparate treatment appear to raise an inference of discrimination. Plaintiff alleges that, unlike him, other injured workers were "never . . . put on [l]eave of [a]bsence and deprived of their pay," and alleges that he witnessed such workers "come in to collect their checks as they usually do when they normally work." (Am. Compl. 3, 7.) Although "the Amended Complaint is otherwise silent as to these comparators," *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014), Plaintiff does allege that the other workers, like him, were injured. Plaintiff does not explicitly state that the other workers who received benefits were not disabled, but because he is proceeding *pro se*, these allegations still support his disparate treatment claim. Plaintiff need only raise a "minimal inference" of discrimination at this stage, however, Plaintiff must still adequately plead that he was disabled or perceived as disabled.

### 2. Termination

Plaintiff makes only vague allegations about the circumstances surrounding his termination, asserting that Defendant fired him some time during his leave of absence because Defendant believed he "walked off" the job. (Am. Compl. 7.) Plaintiff alleges that he remained in frequent communication with the company dispatcher and HR, which suggests that Defendant should have known that Plaintiff did not "walk off" his job. However, these facts alone do not suggest that Plaintiff was terminated under circumstances giving rise to an inference of disability discrimination.

Because the Amended Complaint fails to allege that Plaintiff was disabled as defined in the ADA, his claim fails at the outset, and the Court dismisses Plaintiff's ADA claims arising from the disciplinary leave, denial of benefits and his termination.

### c. Plaintiff's ADA failure to accommodate claim

Liberally construed, the Amended Complaint claims that Defendant failed to accommodate Plaintiff's disability. (*See* Am. Compl. 9 ("[Defendant] was never interested in offering me positions . . . [that] I was capable of doing.").) To establish a prima facie case of failure to accommodate a disability, a plaintiff must show that, among other things, he is a person with a disability under the meaning of the ADA. *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 9697 (2d Cir. 2009); *see also Ugactz v. United Parcel Serv. Inc.*, No. 10-CV-1247, 2013 WL 1232355, at *7 (E.D.N.Y. Mar. 26, 2013) (detailing requirements for a failure to accommodate claim). As discussed above, Plaintiff has failed to adequately allege that he was disabled under the ADA. Accordingly, his failure to accommodate claim must be

dismissed.[12]

### d.  Plaintiff's NYSHRL claims

Defendant argues that the Court lacks jurisdiction over Plaintiff's NYSHRL claims

because Plaintiff previously filed a complaint with the NYSDHR raising the same claims.  (Def.

Mem. 5–7.)

Under the NYSHRL, an individual who files a complaint with the NYSDHR is

jurisdictionally barred from filing a lawsuit in state or federal court for the same claims.  *See*

N.Y. Exec. Law § 297(9); *Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013).

("The District Court properly ruled that her NYSHRL claim was barred on the basis of election

---

[12] Defendant asserts that any failure to accommodate claim fails because (1) the May 10, 2013 Letter was an attempt to engage in the interactive process to accommodate Plaintiff, (2) leave was a reasonable accommodation since Plaintiff alleges he was unable to work, and (3) Plaintiff failed to allege facts showing that light duty work would have been a reasonable accommodation.  (Def. Mem. 11–12.)  Given Plaintiff's failure to plead a disability, the Court will not resolve these arguments in full, but notes that, assuming Plaintiff could plead a disability, his failure to accommodate claim is not meritless.  "[A]n employee's request for an accommodation triggers a duty on the part of the employer 'to investigate that request and determine its feasibility.'"  *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 (2d Cir. 2006) (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000)).  "The ADA 'envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated.'"  *Harris v. Mills*, 572 F.3d 66, 75 (2d Cir. 2009) (quoting *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)).

It appears that Plaintiff apprised Defendant of his injury and requested an assignment to light duty work, and, although Defendant indicated it would call him about such work, it never did.  While Defendant cites the May 10, 2013 Letter as its attempt to engage in the interactive process, Plaintiff contests the letter's authenticity in the Amended Complaint.  (Am. Compl. 10–11; Pl. Opp'n 11–15; May 10, 2013 Letter.)  In addition, Defendant suggests that Plaintiff failed to allege whether a light duty accommodation eliminated the "essential functions" of his job, but it is unclear that such a showing is required at this stage.  *See Rodriguez v. City of New York*, No. 13-CV-6138, 2015 WL 332989, at *2 (E.D.N.Y. Jan. 23, 2015) ("The determination of the essential functions of the job is a factual question, resolution of which is inappropriate in the context of a motion to dismiss." (quoting *Abbasi v. Herzfeld & Rubin, P.C.*, No. 94-CV-2809, 1995 WL 303603, at *2 (S.D.N.Y. May 17, 1995))).  Because Plaintiff has failed to allege a disability, the Court will not resolve these issues.

of remedies . . . which . . . precludes resort to courts after claims have been filed with a local commission on human rights."). "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)." *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (citing *Moodie v. Federal Reserve Bank*, 58 F.3d 879, 882 (2d Cir. 1995)). The election of remedies bar has been construed to cover claims arising out of the "same incident on which plaintiff's SDHR complaint was based [i.e.,] . . . if they are based on the same operative events." *Williams v. City of New York*, 916 F. Supp. 2d 517, 521 (S.D.N.Y. 2013) (alteration omitted) (quoting *Higgins*, 836 F. Supp. 2d at 188–89).

Here, Plaintiff filed a complaint with NYSDHR on May 14, 2013, making vague allegations centering on unfair treatment based on age and disability, and alleging facts identical to those in this case. (*See* NYSDHR Compl. 9–13, 17–18 (discussing Plaintiff's hernia, surgery, and attempts to return to work).) The Amended Complaint emphasizes the improper denial of benefits, but in the "Acts of Discrimination" section of his NYSDHR Complaint, Plaintiff did not check any of the boxes, including "Denied me leave time or other benefits," and only wrote "Unfair Treatment." (*Id.* at 6.) However, in an attached type-written statement of facts, Plaintiff described a similar chain of events, including Defendant's alleged failure to pay Plaintiff in his "hour of need," and "push[ing] [him] out." (*Id.* at 17.) On November 13, 2012, NYSDHR issued its "Determination and Order after Investigation," finding no probable cause to believe that Defendant had engaged in the discrimination of which Plaintiff complained, noting that Plaintiff's allegation that Defendant failed to pay him "does not support a basis of discrimination." (NYSDHR Order 1–2.) Because Plaintiff's NYSHDR Complaint concerned the very incidents at issue in the instant case, the election of remedies doctrine bars him from

bringing these claims. *See Higgins*, 836 F. Supp. 2d at 188–89 ("The election of remedies bar also precludes consideration of any claim — whether brought under the NYSHRL or the NYCHRL — arising out of the same incident on which Higgins's SDHR complaint was based."). Accordingly, the Court dismisses Plaintiff's claims under the NYSHRL.

### e. Leave to amend

The Amended Complaint makes allegations of disability discrimination under the ADA without providing factual allegations showing that Plaintiff was disabled because of his hernia operation or that Defendant perceived him to be disabled. For example, although it is clear Plaintiff underwent hernia surgery, he does not describe how the hernia surgery affected or limited him in any major life activity like lifting, standing, walking or working. Plaintiff alleges that his doctor prescribed light work duty post-surgery, but fails to provide any detail as to the physical limitations necessitating light duty rather than his normal work. Further, Plaintiff fails to allege why, after his manager requested a doctor's report, he did not return to Defendant until April 26, 2013, or why, despite his dispatcher stating he could be out work for three months, Plaintiff was out of work for six or seven months.

Although Plaintiff's allegations as to his ADA claim are insufficient to state a claim, the Court will grant Plaintiff leave to file a second amended complaint within thirty (30) days of the date of this Memorandum and Order as to those claims. Plaintiff is informed that if he elects to file a second amended complaint it must contain more details regarding his alleged disability and how that disability affected (1) his life activities generally, and (2) his work with Defendant specifically. Each event in his story should be described in a separate numbered paragraph. Plaintiff is further informed that a second amended complaint does not simply add to his Amended Complaint. Once a second amended complaint is filed, it completely replaces the prior

Amended Complaint.  Therefore, Plaintiff must include in the second amended complaint *all* the necessary information that was contained in the prior Amended Complaint, and should attach all relevant documents.  The second amended complaint must be captioned as a "Second Amended Complaint," and bear the same docket number as this Memorandum and Order.

### III.  Conclusion

For the foregoing reasons, the Court dismisses Plaintiff's NYSHRL claims against Defendant with prejudice.  The Court also dismisses Plaintiff's ADA claims, and grants Plaintiff leave to file a Second Amended Complaint within thirty (30) days of this Memorandum and Order as to the ADA claims.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  September 28, 2015
       Brooklyn, New York